IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RUDY LEO FLORES,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER DENYING MOTION TO SUPPRESS<br><br><br><br>Case No. 1:10-CR-109<br><br>Judge Dee Benson |

This case is before the court on defendant Rudy Leo Flores's Motion to Suppress. (Dkt. No. 21.) On April 25, 2011, the court conducted an evidentiary hearing on the motion. The defendant attended the hearing and was represented by Michael J. Langford. Nathan D. Lyon represented the United States. At the conclusion of the evidentiary hearing, the court ordered briefing from the parties. Having considered the parties' briefs, and the evidence presented at the hearing, the court enters the following memorandum decision and order.

## **BACKGROUND**

Having listened to the testimony and carefully observed all of the evidence in this case,

1

the court finds the relevant facts as follows.[1]  Justin Kaufman is a police officer with the Ogden City Police Department.  (Tr. at 5.)  On August 18, 2011, at approximately 3:10 a.m., Officer Kaufman was in the area of 21st Street and Jackson in Ogden, Utah.  (Tr. at 7.)  Officer Kaufman was in uniform and armed with a gun and taser.  (Tr. at 22.)  Officer Kaufman was traveling east and noticed an individual, later identified as the defendant, walking eastbound on the sidewalk.  (Tr. at 7, 18.)  Because of the time of night, Officer Kaufman decided to make contact with the individual.  (Tr. at 7.)  Officer Kaufman did not activate his overhead lights, rather he pulled his car to the side of the road.  (Tr. at 7.)  Officer Kaufman then rolled down his window and said "hey, what is going on."  (Tr. at 8.)  The defendant stopped and responded that he was walking to his girlfriend's house.  (Tr. at 8.)  Officer Kaufman was in his car and the defendant was on the sidewalk.  (Tr. at 9.)  Officer Kaufman's car did not obstruct the defendant's path.  (Tr. at 9.)  Officer Kaufman asked the defendant for his name.  (Tr. at 9.)  The defendant gave his name, Leo Flores, and indicated that he had taken care of all of his warrants.  (Tr. at 10.)  Officer Kaufman then asked if he was also known as Rudy Flores.  (Tr. at 9.)  The defendant then made small talk with Officer Kaufman.  (Tr. at 10.)  During the small talk, Officer Kaufman ran a records check on Rudy Flores.  (Tr. at 10.)  The defendant and Officer Kaufman talked for "a minute or two."  (Tr. at 11.)  Officer Kaufman did not find any warrants for Rudy Flores.  (Tr. at 11.)  Officer Kaufman did not take anything from the defendant, command him to do anything, make any accusations, or repeatedly ask the same question.  (Tr. at 13.)  After running a warrants check the defendant indicated that he had been staying out of trouble.  (Tr. at 11.)  After hearing

---

[1] Reference to the transcript of the evidentiary hearing conducted on April 25, 2011, will be cited as "Tr. at __."

the defendant say that he was staying out of trouble, Officer Kaufman said "you don't have anything illegal, do you?" (Tr. at 11.) The defendant answered that he had a pipe. (Tr. at 11.) Officer Kaufman was still in his car and the defendant was on the sidewalk. (Tr. at 12.) After the defendant stated that he had a pipe, Officer Kaufman noticed that the defendant "had his hand in his left pocket . . . and was shuffling around in it." (Tr. at 12.) Officer Kaufman stated that he was concerned because he knew the defendant was "a known gang member with a violent criminal history." (Tr. at 13-14.) Officer Kaufman feared for his safety and was worried that the defendant might "be trying to pull out a weapon." (Tr. at 14.) Officer Kaufman asked the defendant to remove his hand from his pocket; the defendant did not comply. (Tr. at 13.) Officer Kaufman again asked the defendant to remove his hand from his pocket and again the defendant did not comply. (Tr. at 14.) Officer Kaufman, fearing for his safety, got out of his vehicle and handcuffed the defendant. (Tr. at 14-15.) While being handcuffed the defendant voluntarily stated that he also had dope on him. (Tr. at 15.) Officer Kaufman then searched the defendant. (Tr. at 15.) During the search Officer Kaufman found a pipe, a bag with a white crystal substance in it, and a magazine with four .22 caliber bullets. (Tr. at 15.) Upon finding the magazine and bullets Officer Kaufman asked the defendant if he had a gun. (Tr. at 16.) The defendant said that his friend, Jose, had the gun. (Tr. at 16.) Officer Kaufman placed the defendant in the patrol car and began searching the area for a gun. (Tr. at 16.) Officer Kaufman pointed his flashlight on the ground and saw a gun. (Tr. at 16.) Officer Kaufman then read the defendant his Miranda rights. (Tr. at 17.) The defendant waived his rights and said that a friend gave him the gun and that he was going to sell the gun. (Tr. at 17.) Throughout the encounter,

Officer Kaufman was the only police officer at the scene. (Tr. at 12).

As a result of these events, the defendant was charged in a two-count indictment with being a felon in possession of a firearm and possession of methamphetamine. (Dkt. No. 1, Indictment.) Thereafter, the defendant moved to suppress the evidence in this case on the grounds that Officer Kaufman's conduct violated his Fourth Amendment rights. (Dkt. No. 21, Def.'s Mot. To Suppress.)

## **DISCUSSION**

The Fourth Amendment to the United States Constitution protects citizens from unreasonable searches and seizures by government actors. *See* U.S. Const. Amend. IV; *United States v. Sanchez*, 89 F.3d 715, 717 (10th Cir. 1996). In this case, the defendant claims that Officer Kaufman violated his Fourth Amendment rights by unlawfully detaining him on the sidewalk. (Def.'s Mem. In Supp. At 2.)

**The Encounter Between Officer Kaufman and Defendant**

The defendant argues that he was seized by police when Officer Kaufman pulled his vehicle to the side of the road and talked to the defendant. The defendant argues that, based on the totality of the circumstances, a reasonable person would not have felt free to terminate the encounter with Officer Kaufman.

The Supreme Court has held that not all encounters with law enforcement implicate the Fourth Amendment. In *Florida v. Bostick*, the Court expressly provided that a "seizure does not occur simply because a police officer approaches an individual and asks a few questions." 501 U.S. 429, 434 (1991). The Court explained: "Only when the officer, by means of physical force

4

or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Id.*; *see also Florida v. Royer*, 460 U.S. 491, 497 (1983) ("[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen."). The crucial test is "whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Bostick,* 507 U.S. at 437.

The Tenth Circuit Court of Appeals has identified several factors that are relevant to the *Bostick* totality-of-the-circumstances approach. These include, but are not limited to:

> the threatening presence of several officers; the brandishing of a weapon by an officer; some physical touching by an officer; use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory; prolonged retention of a person's personal effects such as identification and plane or bus tickets; a request to accompany the officer to the station; interaction in a nonpublic place or small, enclosed place; and absence of other members of the public.

*United States v. Ringold*, 335 F.3d 1168, 1172 (10th Cir. 2003) (citing *United States v. Hill*, 199 F.3d 1143,1147-48 (10th Cir. 1999)). The Tenth Circuit has also made clear that "no single factor can dictate whether a seizure occurred." *Hill*, 199 F.3d at 1148. Considering the facts of this case in light of these legal principles, the court concludes that the interaction between the defendant and Officer Kaufman amounted to a consensual encounter that did not implicate the Fourth Amendment.

The encounter between Officer Kaufman and the defendant was on a public street. The defendant was on a sidewalk and Officer Kaufman was in his vehicle on the side of the road.

5

Although Officer Kaufman was in uniform and armed, he was the only officer present and there is not any evidence that he pulled his gun or taser during the encounter. Officer Kaufman approached the defendant from the side, was at least 3 feet from the defendant, did not block the defendant's path, physically restrain, or prevent the defendant from continuing down the sidewalk.

Defense counsel argues that "no other people were present during the time the officer questioned the Defendant" and that a reasonable person would not feel free to terminate the encounter. To support his argument the defendant relies solely on Officer Kaufman's testimony regarding his observations prior to Officer Kaufman pulling over to talk to the defendant and not Officer Kaufman's observations during the encounter.

> Q. Based upon, as you stated, the time of night and the area, did you make a determination whether you wanted to speak with this individual?
>
> A. Yes, I did, due to the fact there had been a lot of crime in the area and there were no vehicles or no people around, walking around, and I wanted to stop and talk with the individual.

(Tr. at 7.)

This encounter took place on a public street and the defendant has not provided any evidence regarding other people on the street, or cars passing by during the encounter. Lastly, the defendant argues that Officer Kaufman failed to expressly tell him that he was free to leave. The consensual nature of the encounter is not undermined by Officer Kaufman's failure to expressly tell the defendant he was free to leave. *See INS v. Delgado*, 466 U.S. 210, 216 (1984) ("While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the

response."); *see Falso United States v. Broomfield*, 201 F.3d 1270, 1275 (10th Cir. 2000) ("[T]here is nothing unlawful about the practice of approaching individuals and asking them potentially incriminating questions, and there is no per se rule requiring law enforcement officials to specifically advise those individuals they do not have to answer police questions.").

Accordingly, the court finds that the encounter between Officer Kaufman and the defendant, viewed in its totality, was a consensual encounter as set forth in Supreme Court precedent and Tenth Circuit decisions. Considering all of the facts in this case, Officer Kaufman's conduct would not have conveyed to a reasonable person that "he was not free to decline the officers' requests or otherwise terminate the encounter." *Bostick*, 501 U.S. at 439. Because the encounter was consensual, it was not a seizure within the meaning of the Fourth Amendment.

## **CONCLUSION**

Having determined that the encounter between the defendant and Officer Kaufman was consensual, the defendant's Motion to Suppress is DENIED.

DATED this 14th day of July, 2011.

Dee Benson
United States District Judge